UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RICHARD DEAN STEIN,

               Plaintiff,                   Case No. 1:16-cv-1015

v.                                   Honorable Robert Holmes Bell

G. WHITINGER et al.,

               Defendants.
_____/

### OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is presently incarcerated in the Baraga Correctional Facility in Baraga, Michigan.  The incidents he describes in the complaint, however, occurred while he was incarcerated in the Michigan Reformatory in Ionia, Michigan.  On July 4 2015, Plaintiff was placed in temporary segregation at the direction of Defendant Lieutenant G. Whitinger.  He was released four days later.

**Claim 1-Defendant Whitinger**

Plaintiff complains that Defendant Whitinger placed him in segregation without notice or justification on July 4, 2015.

**Claim 2-Defendant Schooley**

Plaintiff filed a grievance (ECF No. 1, PageID.12), claiming: (1) Defendant Whitinger accused Plaintiff of receiving drugs and delivering them to Plaintiff's nephew; (2) Plaintiff claimed he knew nothing about it; and (3) Defendant Whitinger placed him in segregation. On July 10, 2015, Defendant Deputy Warden S. Schooley reviewed the response to Plaintiff's grievance.  (*Id*.)  He rejected the grievance noting that Plaintiff was placed into temporary segregation in accordance with Michigan Department of Corrections (MDOC) Policy Directive

- 2 -

04.05.120 ¶J.[1]  (*Id.*, PageID.10, 12-13.)  Plaintiff contends that Defendant Schooley did not properly investigate his grievance as required by MDOC Policy Directive 03.02.130 ¶X.[2]

### Claim 3-Defendant Miller

Although Defendant Schooley reviewed the response, it was Defendant Grievance Coordinator K. Miller who actually responded. (*Id.*, PageID.11-13.) Accordingly, Plaintiff contends Defendant Miller also failed to comply with MDOC policy directives and the law when he responded to Plaintiff's grievance.

### Claim 4-Defendant Palmer

Plaintiff appealed the step I grievance response.  (ECF No. 1, PageID.15-17.)  His appeal asserted that the real reason Defendants Miller and Schooley rejected his grievance is that they were covering for Defendant Whitinger's improper placement of Plaintiff in segregation.

---

[1]The referenced policy directive provides:

Temporary segregation is used when it is necessary to remove a prisoner from general population pending a hearing for a major/Class I misconduct violation, classification to administrative segregation, pending an investigation of a prisoner's need for protection, or transfer.  A prisoner's placement in temporary segregation, including the reason for such placement, shall be documented in writing and approved by the Warden or designee within 72 hours after the prisoner's placement in temporary segregation.  The prisoner does not have to be provided written notice of placement in temporary segregation; however, once it becomes the intent to classify the prisoner to administrative segregation, a Notice of Intent to Classify to Segregation (CSJ-447) shall be issued as set forth in Paragraph Q..

MICH. DEP'T OF CORR., Policy Directive 04.05.120 ¶J.

[2]With respect to rejected grievances, the referenced policy provides:

After receipt of the grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy and, if so, sign and return the grievance to the grievant with an explanation as to why it was rejected.  In CFA, if the grievance is being rejected, the Grievance Coordinator's supervisor shall review the reason for the rejection to ensure it is in accordance with policy; both the Grievance Coordinator and the supervisor shall sign the grievance before returning the grievance to the grievant.

MICH. DEP'T of CORR., Policy Directive 03.02.130 ¶X.

Defendant Warden Carmen Palmer responded to the appeal on July 30, 2015.  (*Id*., PageID.16-17.) Defendant Palmer stated that she found no impropriety or violation of policy.  (*Id*. PageID.17.) Plaintiff contends that Defendant Palmer failed to adequately investigate his grievance appeal.

### Claim 5-Defendant Sissell

On July 5, 2015, while Plaintiff was in segregation, he asked Defendant Sergeant Sissell why he was in administrative segregation.  During his investigation, Defendant Sissell was asked to review a Notice of Intent to Conduct an Administrative Hearing (NOI) with Plaintiff.  The NOI, (ECF No. 1, PageID.20), indicated that an administrative hearing was necessary to determine proper placement for Plaintiff after an investigation of the accusation referenced in Plaintiff's grievance.  Plaintiff signed the NOI.  (*Id*.)   Plaintiff states: "I believe that Sergeant Sissell's actions were harmless, but instead he knew someone wasn't playing fair ball.  Sergeant Sissell should [have] reported this matter to higher ranking officials, Inspector, Warden."  (*Id*., PageID.19.)

### Claim 6-Defendant Russell

Plaintiff appealed Defendant Palmer's step II grievance response.  Plaintiff claimed that Defendant Palmer's reliance on the 72 hour time period in MDOC Policy Directive 04.05.120 ¶J could not excuse his four day stay in segregation.[3]  (ECF No. 1, PageID.16.)  Defendant Richard C. Russell, Manager of the Grievance Section in the Office of Legal Affairs for the Michigan Department of Corrections responded to Plaintiff grievance at Step III on October 21, 2015.  (ECF No. 1, PageID.22.)  Defendant Russell upheld the rejection.  (*Id*.)  Plaintiff has filed suit against Defendant Russell for his unsatisfactory response to Plaintiff's grievance appeal.

---

[3]Plaintiff appears to misread the policy directive to require his release in 72 hours.  The only event required to occur within 72 hours is that the "reason . . . for placement in temporary segregation . . . be documented in writing and approved by the Warden or designee . . . ."   MICH. DEP'T OF CORR., Policy Directive 04.05.120 ¶J.  There is no requirement that the prisoner receive any written notice with regard to placement in temporary segregation.  *Id.*

**Discussion**

I.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

II.   <u>Violations of Michigan Department of Corrections policies</u>

Throughout his complaint, Plaintiff references the defendants' failures to follow departmental policies.  Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Defendants' alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Simply claiming violations of Michigan Department of Corrections policies does not suffice to state a claim under § 1983.

Plaintiff makes a passing reference to due process violations by Defendant Whitinger in Claim 1 and in his Level I grievance.  Beyond that, however, Plaintiff does not tie the allegations in his six claims to a particular constitutional right.  He notes that defendants violated policy and suggests that there was no reason to place him in temporary segregation.  The only other reference to the constitution is in a string cite of federal cases under "Section III. Statement of Claims" on the prisoner civil rights complaint form.  (ECF No. 1, PageID.3.)  Sprinkled in the string cite of cases are the following terms: "U.S. Constitution Amendment Six, U.S. Constitution Amendment 14. <u>Abuse of Position</u>: [case cites] Misuse of power. [case cites] First Amendment Right [case and

statutory cites] U.S.C.A. Const. Amend 14 [subject matter "key" cites[4] and case cites.]" (*Id*.)  Each of the referenced constitutional violations is addressed below.

### III.    Sixth Amendment

No matter how liberally the Court construes these references, there does not appear to be any claim for violation of Plaintiff's Sixth Amendment rights.   It is to "'criminal prosecutions' . . . alone [that] the explicit guarantees of the Sixth Amendment are applicable." *Kirby v. Illinois*, 406 U.S. 682, 690 (1972).   At most there was an investigation in anticipation of a prison disciplinary proceeding, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).   Plaintiff's claim for a violation of the Sixth Amendment here is frivolous.

### IV.    First Amendment

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. CONST. amend. I.   "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff's free speech rights are "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999).   Here Plaintiff offers nothing to provide notice to the defendants as to the nature of his First Amendment claim.   His mere reference to the First Amendment is insufficient to state a claim. *Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of

---

[4]The key cite topics are: "Constitutional Law Key 272(2), Prison Key 13(7), Constitutional Law Key 257[.]" The key numbers do not match up to the current West Key Number System.

the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

V.     Fourteenth Amendment

Plaintiff contends that Defendant Whitinger deprived Plaintiff of his liberty by placing him in temporary segregation without due process of law.  To allege a procedural due process claim, Plaintiff must identify a protected liberty or property interest of which he has been deprived.  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.") (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano,* 427 U.S. 215, 225 (1976).  In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983).  Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010).  Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant

- 9 -

hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484.  Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant).  The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest.  *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf.  Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).  Plaintiff's four-day stay in temporary segregation did not impose an atypical and significant hardship.  Thus it did not require the protections of due process.  Plaintiff has failed to state a claim for violation of his due process rights arising from his placement in temporary segregation.

Alternatively, Plaintiff's complaint might be construed to challenge the process he received in the prison grievance system.  That construction does not change the result.  Plaintiff has

no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, the actions of Defendants Schooley, Miller, Palmer, and Russell in handling Plaintiff's grievance, did not deprive him of due process.

VI.   Failure to act

The Sixth Circuit held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  The reason is that there must be active unconstitutional behavior.  Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance.  *Id.*  Plaintiff does not complain that any of the Defendants, other than Defendant Whitinger, placed him in segregation.  The core of Plaintiff's complaint is that Defendant Whitinger placed Plaintiff in temporary

segregation unfairly and Defendants Schooley, Miller, Palmer, Sissell, and Russell failed to remedy that.  That is not active unconstitutional behavior that might give rise to a claim under § 1983.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: <u>October 26, 2016</u>                          <u>/s/ Robert Holmes Bell</u>
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE